UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Duglas A.V.V.,

                Petitioner,

                                    ORDER GRANTING PETITION FOR
v.                                  WRIT OF HABEAS CORPUS
                                    Civil File No. 26-02701  (MJD/JFD)

Todd Blanche, et al.,

                Respondents.

---

Craig S. Coleman, Faegre Drinker Biddle & Reath LLP, Counsel for Petitioner.
David W. Fuller, Carl Berry, Assistant United States Attorneys, Counsel for
Federal Respondents.

---

This matter is before the Court on Petitioner Duglas A.V.V.'s Petition for

Writ of Habeas Corpus.  (Doc. 1.)  Petitioner claims he is being detained in

violation of the Fourth Amendment and the Due Process Clause of the Fifth

Amendment.  Respondents counter that Petitioner is subject to mandatory

detention under 8 U.S.C. § 1225(b)(2)(A) pending removal proceedings.

I.      **FACTS**[1]

Petitioner is a citizen of Honduras and has resided in the United States for

nearly 23 years after fleeing violence and poverty in his country and entering via

---

[1] Undisputed facts from the Petition are deemed admitted. See Paula G. v. Bondi,
No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Arizona without inspection on or around September 10, 2003 to seek a better future for himself.  (Doc. 1 ¶¶ 2, 33-34.)  Shortly after arriving in the country, Petitioner settled in Minnesota where he has lived ever since.  (Id. ¶ 2.)  Petitioner was residing in Lake Elmo at the time of his arrest.  (Id. ¶ 14.)  Petitioner has three American-citizen children, ages 20, 18, and 13, who were all born in Minnesota.  (Id. ¶ 35.)[2]  Petitioner lives with his children, his long-term partner, and her ten-year-old son, who has extensive medical issues that require around-the-clock supervision, complex care, and frequent hospitalizations.  (Id.)  The boy was in the hospital at the time Petitioner filed the instant petition.  (Id.)

Petitioner has been continuously employed for the past 20 years and started his own painting business in 2025, which he ran until he was detained.  (Id. ¶ 2.)  He is the "financial pillar of his family" and income from his business and painting jobs supports his older children while one pursues a college education and one opens his own barber shop.  (Id. ¶ 38.)  His income also supports his partner while she cares for her son fulltime. (Id.)  Since November

---

[2] Respondents maintain that Petitioner entered the country without inspection in August 2012.  (Doc. 5 at 1-2.)  This statement is contradicted not only by the Petition, but also by the fact that Petitioner has two American-born children whose births pre-date 2012.

2025, his children have become even more dependent on him for emotional support and stability because their mother was incarcerated at that time. (Id.)

Petitioner and his family have established themselves in the community. They regularly attend church and school events. Petitioner helps his youngest child with homework and participates in soccer leagues with his older two children. (Id. ¶ 37.) Other than minor traffic violations, Petitioner has no criminal history in the United States or Honduras. (Id. ¶ 38.)

On April 9, 2026, approximately five ICE agents dressed in plain clothes and driving unmarked cars, approached Petitioner inside the building of one of his painting jobs and, without identifying themselves as agents or presenting a warrant or any documents, asked Petitioner if he was "Duglas [A.V.V.]." (Id. ¶ 39.) Because he did not recognize these people as ICE, Petitioner answered affirmatively and followed the agents outside, where he was handcuffed and arrested, ostensibly "in connection with an investigation into his children's mother," from whom he has been separated for approximately 8 years. (Id.)

ICE agents then grabbed his wallet; checked his ID; ordered him into one of the unmarked cars; transported him to detention where agents confiscated Petitioner's personal property and affects, including his wallet and phone; and

3

asked him some questions about his children's mother.  (Id.)  Petitioner

maintains that he was not presented with any judicial or administrative warrant,

either at the time of his arrest or after arrival in detention.  (Id. ¶ 40.)

He was immediately placed in removal proceedings.  On May 15, 2026, an

immigration judge ordered his removal.  (Id. ¶ 42.)  Petitioner is appealing that

decision based on the extreme hardship his removal would cause his U.S.-citizen

children.  (Id.)  He is currently in ICE custody at the Freeborn County Adult

Detention Center.  (Id. ¶ 41.)  Petitioner is not subject to a final order of removal.

Petitioner filed the instant Petition for Writ of Habeas Corpus on May 20,

2026. (Doc. 1.) That day, the Court issued an Order to Show Cause.  (Doc. 3.)  On

May 26, Respondents responded and on June 1, Petitioner replied.  (Docs. 5, 7.)

## II.    DISCUSSION

Petitioner argues that his detention violates his substantive and procedural

due process rights under the Due Process Clause of the Fifth Amendment and his

Fourth Amendment right against unlawful seizure.

### A.    Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (holding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)).  District courts have jurisdiction to hear habeas challenges to immigration-related detention.  Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.  But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is "lawful, unlawful, temporary, or permanent."  Id. at 693 (citations omitted).  This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."  Id.  Petitioner bears the burden to prove detention contrary to law by a preponderance of the evidence.

See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B.    Effect of Avila v. Bondi on Petitioner's Claims**

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A), as confirmed by the Eighth Circuit in Avila v. Bondi 170 F.4th 1128 (8th Cir. 2026). (Doc. 5 at 1-2, 7.)

While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on § 1225, Avila does not foreclose constitutional or statutory claims not raised in that case.  The Court therefore turns to Petitioner's constitutional arguments.

**C.    Warrantless Arrest**

A theme throughout Respondents' brief is that Petitioner's detention is mandatory under § 1225(b)(2).  However, while Respondents invoke § 1225(b)(2) now, they did not arrest Petitioner under that statute.  (Doc. 5 at 2; Doc. 6 (Deportation Officer Sabin Decl.) ¶ 6.)  Rather, they cited the discretionary detention provisions of 8 U.S.C. § 1226 in the Form I-200 administrative warrant. (Doc. 6-1 (directing the warrant to "[a]ny immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the

6

Immigration and Nationality Act and part 287 of title 8, Code of Federal

Regulations, to serve warrants of arrest for immigration violations").)

The Court notes that although the petition states that Petitioner was never

given a warrant, Respondents' exhibits state Petitioner was served the I-200

warrant on April 9, 2026 at St. Paul, MN.  (Id.)

### 1.  Warrantless Arrest Under 8 U.S.C. § 1226(a)

Because Respondents represented to Petitioner in this warrant that his

arrest was based on § 1226(a), the Court holds Respondents to that

representation and considers the arrest under the discretionary detention

framework of § 1226.  Martha C.G.P. v. Blanche, 26-cv-2308 (DWF/JFD), 2026 WL

1329577, at *2 (D. Minn. May 13, 2026) (citing Francisco M.A. v. Blanche, No. 26-

cv-2032 (JRT/EMB), 2026 WL 1229701, at *1 (D. Minn May 5, 2026)).  Section

1226(a) prefaces arrest "[o]n a warrant issued by the Attorney General."  Thus, to

detain a noncitizen under § 1226(a), a warrant is required.  Id. at *3 (citing

Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn.

Jan. 5, 2026) (collecting cases)).

A Form I-200 is the administrative arrest warrant that authorizes a non-

citizen's arrest.  However, the I-200 must be issued "[a]t the time of issuance of

the notice to appear [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b).  The NTA is the document that initiates removal proceedings.  See 8 CFR § 239.1.  "Putting both rules together, DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA.  See 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1)."  Dylan M. v. Blanche, 26-cv-02802 (JMB/LIB), Docket No. 12 at 9.

Here, the Form I-200 and the NTA were issued on April 9, 2026, the same date as Petitioner's arrest.  (Docs. 6-1; 6-3.)  However, the record does not show that the NTA was generated before or at the same time as the Form I-200 because there are no time stamps.  The sworn affidavit submitted by Respondents that attests to the authenticity of Respondents' exhibits was written by an affiant who has no personal knowledge of when or how the documents were issued or served, which does not help the Court.  (Doc. 6 ¶¶ 6, 8, 10-11.)  That being said, the Court's decision does not rely on the timing of these documents.

Rather, the Court's decision relies on the content of the warrant.  The warrant was presumably issued in the field or after Petitioner's arrest because it is based on "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to

8

other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (Doc. 6-1.)  The Form I-213, "Record of Deportable/Admissible Alien," shows that records/databases were not checked until Petitioner was in custody.  (Doc. 6-2 at 2.)  Respondents could not have gotten "biometric information" such as Petitioner's fingerprints until they had him in custody.  (See Doc. 6-2 at 1.)  Accordingly, the I-200 warrant is invalid because it was issued in the field or after Petitioner was arrested and detained.  Francisco M.A., 2026 WL 1229701, at *2; Jouquin C.S. v. Bondi, Civil No. 26-1438 (DWF/DJF), 2026 WL 483256, at *2 (D. Minn. Feb. 20, 2026) ("A detainee being held pursuant to § 1226(a), as Petitioner is here, must have been served an arrest warrant prior to detention.") (emphasis added); Ahmed M., 2026 WL 25627, at *3 (same) (collecting cases); Chogllo Chafla v. Scott, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Since the Government did not comply with the plain language of section 1226(a), [petitioners'] immediate release is justified.").

### 2.    Warrantless Arrest Under 8 U.S.C. § 1225(b)(2)

To the extent that Petitioner is an "applicant for admission" and subject to mandatory detention under 8 U.S.C. § 1225(b)(2), federal immigration officials

must still comply with 8 U.S.C. § 1357(a)(2) when making a warrantless arrest.

Under § 1357, an immigration official may arrest a noncitizen without a warrant "if [the officer] has reason to believe that the [noncitizen] is in the United States in violation of any such law or regulation <u>and</u> is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added).

Section 1357 implicates the Fourth Amendment's protections. Specifically, the Fourth Amendment protects all individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest qualifies as a "seizure" and therefore must be supported by probable cause. <u>United States v. Miller</u>, 974 F.2d 953, 956 (8th Cir. 1992). The Eighth Circuit has made clear that the Fourth Amendment's protections apply to "seizures" of noncitizens. <u>See</u> <u>United States v. Quintana</u>, 623 F.3d 1237, 1239 (8th Cir. 2010). Because § 1357(a)(2) implicates seizures of noncitizens, the Eighth Circuit has also stated that the statute's use of the term "reason to believe" means "constitutionally required probable cause." <u>Id.</u> Probable cause exists when, based on the totality of the circumstances, the facts are "sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." <u>Garang v. City of Ames</u>, 2 F.4th 1115, 1121 (8th Cir. 2021).

10

Putting this all together, for the warrantless arrest of Petitioner to be valid under § 1357(a)(2), Respondents must have had probable cause to support that Petitioner was 1) not lawfully present and 2) likely to escape before they could get a warrant based on the totality of the circumstances.

Here, the Court has already determined that Respondents did not conclude that Petitioner was not lawfully present until after Petitioner was arrested, spirited away to the Whipple Building, and interviewed.

Furthermore, Respondents make no argument that Petitioner was likely to escape before a warrant could be obtained; nor could they.   Petitioner has no criminal record.  He was not living "underground," but had a rich decades-long family and community life.  Petitioner also went with agents willingly to answer questions about his former partner and did not try to run away even though ICE agents appeared with a show of force and handcuffed him.  Contra, Zhuang v. Bondi, No. 1:25-CV-00201-CMS, 2026 WL 352872, at *2 (E.D. Mo. Feb. 9, 2026) (finding that the arresting agent had reason to believe that petitioner was "likely to escape" when he attempted to flee during his stop); Luis G.G. v. Noem, No. 5:26-CV-05023-KES, 2026 WL 836807, at *2 (D.S.D. Mar. 26, 2026) (finding that Petitioner was likely to flee because officers knew he was "a passenger in a

11

vehicle whose driver rammed a government vehicle, fled, and twice attempted to evade arrest").

Accordingly, even if Respondents had reason to believe that Petitioner was unlawfully present in the United States at the time they arrested him, something for which they have provided no support, there is nothing in the record suggesting that Petitioner was likely to escape before a valid arrest warrant could be obtained and executed.  "Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen." Ruben D.A.G. v. Blanche, No. 26-cv-2041 (MJD/DJF), Docket No. 9 at 8 (D. Minn. Apr. 20, 2026); Francisco M.A., 2026 WL 1229701, at *3 (stating that to hold that noncitizens are likely to escape merely because they are removable would collapse § 1357(a)(2)'s "two distinct requirements"—that an officer reasonably believe that a noncitizen is in the country illegally and the noncitizen is likely to escape—into one).

Respondents argue that § 1357 does not apply here because § 1357(a)(2) applies only when an agent "has reason to believe" that a noncitizen is in the United States illegally, and immigration officials here determined "following inspection" that detention under 1225(b)(2)(A) was mandatory.  (Doc. 5 at 8.)

12

The Court disagrees. Here, Petitioner's arrest lacked a lawful predicate. See Francisco M.A., 2026 WL 1229701, at *4 ("[R]elease is an available and appropriate remedy for detention that lacks a lawful predicate.") (cleaned up). Therefore, whatever Respondents discovered during an inspection that occurred after his arrest is irrelevant to the analysis. The idea that Respondents could find some way to justify an arrest without a lawful predicate after they have a petitioner in custody runs contrary to everything this Court stands for. See, e.g., Cutberto R.P. v. Blanche, 26-cv-01934 (MJD/DTS), Docket No. 11 at 10-14; Ruben D.A.G. v. Blanche, 26-cv-02041 (MJD/DJF), Docket No. 9 at 4-8.

In conclusion, the Court finds that Petitioner's detention is unlawful. First, Respondents arrested Petitioner under § 1226, which requires a warrant, and the warrant in this case is invalid. Second, even if Respondents arrested Petitioner under § 1225, which does not require a warrant, Petitioner was not a flight risk under § 1357. Respondents' failure to support the required particularized determination that Petitioner was likely to escape is, on its own, sufficient to grant the petition. See Orellana v. Nobles Cnty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017) ("Without any showing that [Defendant] was likely to escape before a warrant could be secured, the warrantless arrest made under §

1357(a)(2) violates the Fourth Amendment.")  Any other argument on the issue is foreclosed because Petitioner's arrest had an unlawful predicate.

Furthermore, resolution of the Fourth Amendment issues renders discussion of Petitioner's other arguments unnecessary.

### D.    Remedy

Because the Court finds that Respondents did not act within their statutory authority in effectuating Petitioner's arrest, there is no lawful basis for Petitioner's continued detention.  Petitioner's detention violates his Fourth Amendment rights.  Accordingly, release is the appropriate remedy.  See, e.g., Ahmed M., 2026 WL 25627, at *3 ("Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings.") (quotation omitted).  Here, that means release pending resolution of Petitioner's appeal to the Board of Immigration Appeals.

## III.    ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED as follows:**

14

1. Respondents are ordered to immediately release Petitioner pending resolution of his appeal to the Board of Immigration Appeals;

2. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

3. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, passport, cell phone, keys, etc.;

4. Petitioner shall be released on his own recognizance without any conditions upon his release; and

5. Respondents are ordered to confirm with the Court Petitioner's release from custody within forty-eight (48) hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 18, 2026         s/Michael J. Davis
                              Michael J. Davis
                              United States District Court